## Purnell Estate.

Argued September 30, 1966. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused March 1, 1967.

*James C. Larrimer,* with him *Dougherty, Larrimer & Lee,* for appellant.

*Stanley W. Greenfield,* Assistant United States Attorney, with him *Gustave Diamond,* United States Attorney, for United States of America, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 4, 1967:

Ansby V. Purnell died April 12, 1941 leaving a will dated September 21, 1939. He was possessed of a substantial estate. In his will he left his residuary estate "to my wife, Anna S. Purnell, for . . . her natural life, with remainder upon her death to my son, Verner S. Purnell." Ansby further provided: "I direct that my personal estate be distributed to my wife, Anna S. Purnell, as life tenant without requiring her to give bond therefore." Verner survived his mother, who died February 5, 1962. Anna left all her residuary estate to their son Verner S. Purnell, who was not only her executor but, as above mentioned, was also the remainderman under his father's will.

Upon Anna's death, Verner brought a declaratory judgment proceeding * against the District Director of Internal Revenue. The District Director filed an answer to the executor's petition, the averments of which will

---

* The record does not disclose whether this proceeding was brought by Verner as executor, or Verner as remainderman under his father's will.

hereinafter appear. As the question involved is the determination of the liability of Anna's estate for a tax claimed by the United States of America, which rarely ever appears at the audit of an account but assesses the tax or brings a separate proceeding to collect the tax it believes to be due, we hold that a declaratory judgment proceeding will lie.

Ansby's executors—his son, Verner, and Anna's brother, S. H. Smith—filed an account in 1943 showing a residuary estate available for distribution of approximately $98,000, which was awarded by the Orphans' Court "to Anna S. Purnell, life tenant." At the audit of that account, the Court did not decide or even consider the questions which are raised in this declaratory judgment proceeding.

*Exactly* what property Anna took at her husband's death *and in what capacity* is important, because between 1941 and 1962, Ansby's property had very greatly enhanced in value as a result of stock dividends, stock splits and the increase in the market value of the stocks and securities which Anna received from her husband's estate. The District Director of Internal Revenue claimed an estate tax on the *increase* in the value of the stocks and securities which had been part of Ansby's residuary estate, under the theory or legal proposition (a) that Anna was the owner of her husband's entire residuary estate and (b) was merely a debtor to Ansby's remainderman, and (c) as such, a debtor only in the amount she actually received at the time of distribution of Ansby's estate. Ansby's remainderman contended that his mother took his father's residuary estate as a trustee, and consequently no tax was due the Government on the increased value of Ansby's securities.

At the time Ansby (a) made his will and (b) when he died, the Fiduciaries Act of 1917 (P. L. 447, 20 P.S. §635) was in effect, and the law governing bequests

such as were made by Ansby was well settled.* More particularly, where a legal life estate in personalty was bequeathed with remainder to others, and with no power of consumption given to the life tenant, a life tenant could *receive absolutely and as her own, all* the property of which the testator gave her a life estate, thereby creating merely a debtor-creditor relationship between herself and the remainderman for the value of the property she actually received at the date of distribution.** This amount, and only this amount, was payable to the remainderman upon the death of the life tenant. *Kirkpatrick's Estate,* 284 Pa. 583, 131 Atl. 361; *Weir's Estate,* 251 Pa. 499, 96 Atl. 1086; *Letterle's Estate,* 248 Pa. 95, 93 Atl. 935; *Reiff's Appeal,* 124 Pa. 145, 16 Atl. 636. We find no testamentary language in Ansby's will which shows an intent to create a different relationship or result.

We further note that in such cases a life tenant could enter security for the value of the property she actually received at the date of distribution, unless the testator provided—as Ansby did—that no security was required; in which event the failure to enter security would not affect the rights of the life tenant or the remaindermen. *Kirkpatrick's Estate,* 284 Pa., supra; *Strawbridge's Estate,* 14 Pa. D. & C. 703 (per GEST, J.); *Gillett's Estate,* 130 Pa. Superior Ct. 309, 197 Atl. 517.

---

* Section 23 of the Fiduciaries Act of 1917 provides that if the life tenant refused or was unable to enter security, the Court upon petition of any person interested, should appoint a trustee whose duty was to hold the property in trust, pay the income thereof to the life tenant, and upon her death pay the corpus of the trust fund to the remainderman entitled thereto. In such an event, the life tenant (the widow), would be entitled only to the income therefrom for her life, and after her death the remainder would be awarded to the remainderman. Cases, infra.

** This was changed by §13 of the Estates Act of April 24, 1947, P. L. 100, 20 P.S. §301-13, which for all practical purposes made the life tenant a trustee for herself and for the remainderman.

We deem it necessary to discuss several facts since they are somewhat unusual. Ansby's widow elected to take under her husband's will; moreover, she also elected to take in kind the stocks and bonds which were listed at their value at the time of distribution to her. On April 28, 1943, the auditing Judge entered a Decree of Distribution which directed Ansby's executors to distribute to "Anna S. Purnell, life tenant" the stocks and bonds contained in his residuary estate, which were valued at $97,785.50. No exceptions were ever filed to this Decree. Anna's election did not expressly state whether she accepted all of her husband's residuary estate as her own, thereby creating (as above mentioned) a debtor-creditor relationship between herself and Ansby's remainderman, who was their son; nor did she ever expressly elect to accept Ansby's testamentary bequest to her as a trust for her life.

However, the parties point to an oral agreement and various actions of the parties which each side claims support their respective contentions.

Anna S. Purnell was ill a great part of her life, and although her mentality was not impaired, she was confined to her home. Her brother (S. H. Smith), who was one of the two executors of Ansby's will, virtually managed Anna's affairs. The shares of stock which were part of Ansby's residuary estate were registered by him in the name of "Anna S. Purnell, life tenant under the will of Ansby V. Purnell" and were placed in a safe deposit box which was registered in his name. Anna had no possession, custody or control of these securities or of the safe deposit box. Smith kept two account books and also had another safe deposit box in Anna's name; the address given was Anna's home address, and all dividend checks therefrom were sent to her at her home. It was never claimed by any of the parties until after Anna's death that Anna was a trustee. Verner, the executor of Anna's estate and the

remainderman under the will of both Ansby and Anna, filed a Federal Estate Tax return in which he stated that he had no knowledge of any trusts in which Anna had any interest. However, in the income tax return of Anna S. Purnell for 1953 (which was prepared by an accountant who was employed by Verner), she listed as part of her income a $1,313.50 capital gain which was realized on the redemption of the preferred stock of the Philadelphia Company, which she had received from Ansby's residuary estate, and paid a tax thereon.

We deem it unnecessary to discuss any of the many additional facts which we believe offer no aid in the solution of the question here involved. The Orphans' Court, in a very able Opinion by Judge Cox, held that Ansby's will created a debtor-creditor relationship between Anna S. Purnell, life tenant, and Verner S. Purnell, remainderman, and that this relationship was not changed nor her interest increased during her lifetime by her or by any of the parties or by any Court. Cf. *Kirkpatrick's Estate*, 284 Pa., supra; *Rumsey's Estate*, 287 Pa. 448, 135 Atl. 119; *Chesnut v. Chesnut*, 300 Pa. 146, 151 Atl. 339. With this interpretation and conclusion we agree.

Decree affirmed, each party to pay own costs.

Mr. Justice EAGEN is of the opinion that the Court below lacked jurisdiction to entertain declaratory judgment proceedings and therefore the decree should be vacated and the proceedings dismissed.