## Righter Estate

*E. A. Dixon, William H. Lathrop, Montgomery, Mc-Cracken, Walker & Rhodes* and *Alvin W. Carpenter, Carpenter, Carpenter and Diehl,* for petitioners.

*Richard Henry Klein,* for trustee.

*H. William Koch,* guardian ad litem.

*Bernard J. Brown, U. S. Attorney,* for United States.

KIVKO, P. J., February 18, 1969.—Thomas M. Righter, testator, a resident of Northumberland County, died July 12, 1918, survived by his widow, Renee, and six children. By his will dated February 24, 1911, duly probated in Northumberland County, he divided his residuary estate into seven equal shares. He gave

each of his six children one of the shares (direct shares) under provisions that will be set out later in this opinion. The seventh share he placed in trust (the trust), the net income payable to his widow (Renee) for life or until remarriage and upon her death or remarriage, the principal to become part of the residuary estate and be disposed of in the same manner as provided for the disposition of the direct shares.

Renee never remarried and is still living. Margaret Righter Smith (Margaret), one of the six children, died April 29, 1967, a resident of the State of New Jersey.

The executors of Margaret's estate filed a petition now before us under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §831, et seq., as amended by the Act of July 25, 1963, P. L. 305, 12 PS §836, 841, for a declaratory judgment to determine whether Margaret's estate has an indefeasibly vested remainder in a one-sixth share of the principal of the trust.

It is alleged in the petition that the executors of Margaret's estate are required to file a Federal estate tax return and that the amount of the tax is partially determined by whether Margaret at her death had any property rights in the trust. It is also alleged that a declaratory judgment is necessary for the reason, inter alia, that in the absence of a Pennsylvania decision, the Federal court may determine the Pennsylvania law on this issue for Federal estate tax purposes and that the Pennsylvania court later (at the termination of Renee's life estate) may find differently, resulting in the payment of taxes by Margaret's estate on an interest which it may not, in fact, receive.

The trustee of the trust (the Girard Trust Company, now the Girard Trust Bank), and all other parties in interest who are sui juris were joined in these proceedings. The court appointed H. William Koch, Esq.,

guardian ad litem for minor issue and trustee ad litem for unborn issue of testator and for all unascertained interests under the will. He also was made a party to these proceedings.

Pursuant to section 11 of the Uniform Declaratory Judgments Act, supra, 12 PS §841, and the procedure set out in section 707 of the Orphans' Court Act of August 10, 1951, P. L. 1163, as amended August 13, 1963, P. L. 670, 20 PS §2080.707, a citation was issued and served to join the United States of America as a party to the proceedings.

The United States, through Hon. Bernard J. Brown, United States Attorney for the Middle District of Pennsylvania, filed a response that it was not entering an appearance nor intervening in the proceedings and that it was interpreting the order issuing the citation as notice under section 707 of the Orphans' Court Act and not as an attempt to join it as an involuntary party. Mr. Brown appeared at the hearing held on the petition and moved that the court dismiss the United States as a party.

I

We will first dispose of this motion. Where the United States has not consented to be sued and has not chosen to intervene, it, as a sovereign power, is immune from suit: Malone v. Bowdoin, 369 U. S. 643, 8 L. Ed 2d 168 (1962) ; Larson v. Domestic & Foreign Commerce Corp., 337 U. S. 682, 93 L. Ed 1629 (1949).

The legislature, therefore, can not confer power on the Orphans' Court to compel the United States to become a party to these proceedings. Neither did the legislature by its enactment of the 1963 amendments cited above to Uniform Declaratory Judgments Act and the Orphans' Court Act intend to confer such power.

. Since the United States neither consented to be made a party nor chose to intervene in these proceedings its motion to be dismissed as a party is allowed.

## II

This determination does not affect the jurisdiction of this court over these proceedings. Section 6 of the Uniform Declaratory Judgments Act, as amended by the Act of July 25, 1963, P. L. 305, 12 PS §836, provides that: "Relief by declaratory judgment or decree may be granted in all civil cases . . . where . . . the court is satisfied that a party asserts a legal . . . status, right, or privilege in which he has a concrete interest . . . there is an uncertainty with respect to the effect of such asserted . . . status, right or privilege upon the determination of any tax imposed or to be imposed by any taxing authority, including the United States, . . . and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding".

The court's discretionary power thus granted to entertain an appropriate petition presenting a Federal tax question is not dependent on the court's jurisdiction over the United States, if, pursuant to sec. 11, 12 PS §841, the United States has been served with a copy of the proceedings and the court considers that the interests of the United States are adequately represented.

Neither does the court's power depend on whether the judgment or decree will "terminate" the tax uncertainty that gave rise to the proceeding. The statutory requirement is that the court be satisfied that the judgment or decree "will serve to terminate" such uncertainty.

The status of the property rights of Margaret's estate in the corpus of the trust is determined by the law of Pennsylvania. Even though the Commissioner of Internal Revenue decided not to accept our determination of these rights, the Supreme Court of the United States has stated that the Federal courts will

accept as binding the decision of the highest appellate court of a State on property rights that are governed by the laws of that State: Commissioner of Internal Revenue v. Estate of Bosch, 387 U. S. 456, 18 L. Ed 2d 886 (1967). See Gallagher v. Smith, 223 F. 2d 218 (1955). The only manner in which such a question can reach the highest court of this state, if the parties choose to carry it that far, is by a proceeding that begins in this court. This is the first step.

The facts alleged in the petition are undisputed. Whether Margaret at the time of her death had an interest in the remainder of the trust that was contingent or vested but divested by her death or indefeasibly vested is a matter of substantial concern to the parties. The principal of the trust is alleged to be approximately $360,000. There is no uncertainty as to the happening of the event on which the enjoyment of the principal depends.

Normally, the rights to the remainder of a trust will be determined on audit of the trustee's account which would be filed on the termination of the trust, in this case on the death of the life tenant. In this instance, this will not occur until an indefinite time in the future. Margaret's estate could suffer substantial harm if it is assessed with and compelled to pay a Federal inheritance tax now on an interest which the State court would someday determine it was not entitled to receive.

The specific purpose of the amendatory acts of 1963 hereinabove referred to is to avoid the possibility of such injustice where the conditions permitting application of such acts have been met. The plain meaning of the amendatory language and the comment of the Joint State Government Commission thereon, 12 PS §836, Comment, make clear that the amendatory acts were adopted to permit a declaratory judgment proceeding where there is an uncertainty with respect

to some asserted status, right or privilege upon the determination of any tax imposed by the taxing authorities, including the United States.

Petitioners have no other statutory or other type of appropriate remedy. The choice of either appealing an assessment of the Federal estate tax to the Court of Tax Appeals or of paying the tax and suing for a refund in the Federal District Court or before the Court of Claims is not an adequate substitute. The power in the Federal courts to sustain the tax is not coupled with a power to determine that the estate taxed will actually receive or enjoy the property on which the tax is imposed. These provisions of the Internal Revenue Code are not the statutory remedies contemplated by the Uniform Declaratory Judgments Act to settle questions of Pennsylvania property law.

We are satisfied that a declaratory judgment will serve to terminate the uncertainty that gave rise to this proceeding, that the interests of the United States are adequately represented and that all the other elements required for the court's exercise of jurisdiction in this matter are present.

The legislative intention of the 1963 Amendatory Acts, stated by the Joint State Government Commission which prepared the legislation to be "to facilitate the resolution of questions involving property rights which affect federal or state taxation, even though the property questions are not otherwise ripe for decision" (Comment, 12 PS §836), has been given effect by a number of lower courts: Kerr Estate, 37 D. & C. 2d 332, 15 Fiduc. Rep. 519 (York County, 1965) ; Carter Estate, 44 D. & C. 2d 509, 18 Fiduc. Rep. 222, (Philadelphia County, 1968) ; Bankes Estate, 431 Pa. 283, 17 Fiduc. Rep. 526 (Columbia County, 1967, appeal by United States quashed on ground that it had no standing to take an appeal) ; Merrick Estate, Orphans' Court of Allegheny County at no. 1034 of 1962

(1966), appeal by United States quashed on ground that the appeal was from a nonappealable decree, 432 Pa. 450 (1968).

In Purnell Estate, 424 Pa. 263, (1967), a petition for a declaratory judgment was filed in an orphans' court to determine the respective rights of a life-tenant and remainderman in a bequest because of a Federal estate tax liability problem involved. The Supreme Court recognized and sustained the jurisdiction of the Orphans' Court to entertain the proceeding. Mr. Chief Justice Bell stated, 424 Pa. at 265: "As the question involved is the determination of the liability of Anna's estate for a tax claimed by the United States of America, which rarely ever appears at the audit of an account but assesses the tax or brings a separate proceeding to collect the tax it believes to be due, we hold that a declaratory judgment proceeding will lie." See Johnson Estate, 403 Pa. 476 (1961).

We hold that the question of the interest of Margaret's estate in the trust created by the will of her father is a proper question for a declaratory judgment proceeding.

### III

Article Seventh of the will partially modified by a codicil of February 24, 1911, contains the relevant provisions on the question at issue. For convenience, all references to paragraphs in the will will mean the paragraphs in Article Seventh.

Paragraph (1) divides the residue of his estate as follows: "All the rest, residue and remainder of my estate of whatsoever kind and wheresoever situate, I direct shall be apportioned for their benefit equally among my said wife, Renee M. Righter, and such children of mine as may then be living and issue of deceased children of mine, such issue of any deceased children taking collectively the place of their

deceased parent per stirpes, upon the principle of representation."

Renee, testator's wife, survived him. Testator had two children by his first wife and four by Renee, his second wife. All six children survived him. The residue of the estate was, therefore, divided into seven equal parts.

The trust was created by the provisions of paragraph (3), which placed one of the shares (Renee's share) in trust, the net income of which was to be payable to Renee for life or until remarriage. Testator further directed that upon Renee's death or remarriage, "the principal so held shall become a portion of the remainder of my residuary estate and be disposed of in the manner herein set forth for the disposition of such remaining portions of my said residuary estate."

Renee is still living. Her daughter, Margaret, predeceased her. The nature of Margaret's interest in this trust at the time of her death is the issue in this proceeding.

In construing the will, we begin with the general rule that a testator's intent, if it is not unlawful, must prevail: Walton Estate, 409 Pa. 225 (1962). This intent must be gathered from a consideration of (a) all language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or if the testator's intent is for any reason uncertain: Houston Estate, 414 Pa. 579, 586 (1964) ; Lewis Estate, 407 Pa. 518, 520, (1962) ; Burleigh Estate, 405 Pa. 373, 376, (1961).

Since testator directed that the principal of the trust, upon Renee's death or remarriage, shall be disposed of in the same manner as he provided for the

disposition of the direct shares, we must first determine what interest Margaret acquired in the direct share intended for her benefit. This is set out in the other provisions of Article Seventh.

Paragraphs (2) and (4) deal with the direct shares given to his children and to issue surviving him of children who predeceased him (referred to herein as "Issue") who attained or would attain the age of 25 years. Paragraph (5) deals with the direct shares of those who died before attaining such age leaving issue surviving them and paragraph (6) deals with the direct shares of those who died before attaining such age without issue surviving them.

In paragraph (2), testator directed that "The shares of my estate to which children of mine shall be found to be entitled who may be over the age of 25 years at the time of my death, I direct shall be assigned, transferred and paid over to such children absolutely."

In paragraph (4), testator directed that the shares allocated to children who were under the age of 25 at testator's death be placed in trust for their benefit until they attained the age of 25 years, the net income of each child's share to be payable to such child's guardian until the child attained the age of 21 years and to the child thereafter until the child attained the age of 25 years. When and as the children and issue respectively attained the age of 25 years, testator directed the trustee to "assign, transfer and pay over his or her share of the principal of my estate unto such child of mine or such (issue) absolutely."

In paragraph (5), testator directed: "Should any children or issue living at the time of my death of any deceased children of mine die before becoming entitled to their portions of the principal of my estate leaving issue of them surviving, I direct said trustee to assign, transfer and pay over the entire portion of the principal of my estate from which such child or

such issue of any deceased child of mine was then entitled to the income unto such issue of the children or issue of deceased children of mine so dying, absolutely, including, after the death or remarriage of my said wife, Renee M. Righter, such further portions of the principal of my estate to which, or the income from which, such children or such issue of any deceased children of mine would have been entitled had they outlived my said wife."

In paragraph (6), testator directed: "Should any children or issue living at the time of my death of any deceased children of mine die before becoming entitled to their portions of the principal of my estate leaving no children of them then surviving, I direct that the portions of the principal of my estate to which such children or such issue of any deceased children of mine would have been entitled shall be added to and become a part of the principal of my estate going to my surviving children and issue living at the time of my death of deceased children of mine upon the same terms and conditions applied to the gifts hereinbefore made to them."

Testator's will was written only seven years before he died. His scheme of distribution of his residuary estate is clear. The primary objects of his bounty, other than his wife, were his children. He intended to vest in them absolute control over his gifts as soon as they respectively reached what in his opinion was the age of discretion in the handling of money, the age of 25 years. Those who were 25 at testator's death, would receive their direct shares outright. If any of his children were under 25 at testator's death, their share would be held in trust, with the income payable to their guardians during their minority, then to them directly from the time they reached the age of 21 years until they reached the age of 25 years, at which time

they would respectively receive their direct shares outright.

He made no provision for persons other than his wife and children except in the contingencies that a child predeceased him or that a child surviving him died before reaching the age of 25 years.

In the first contingency, if a child predeceased testator leaving issue surviving testator (issue) such issue would be entitled to the parent's share per stirpes upon the same terms as were provided for testator's children. In the second contingency, "Should any children or (issue) die before being entitled to their portions of the principal" (i. e., before attaining the age of twenty-five years), the direct share of such child or issue would immediately become payable to the issue of such child or issue and, in the absence of such issue, would revert to the residuary estate.

It is clear that the testator intended that the direct shares would become vested upon his death in the children and issue that survived him, subject to divestiture of the share intended for the benefit of a child or issue that died before reaching the age of 25 years, and that the share of any child or issue that survived him would become indefeasibly vested in such person upon arriving at the age of 25 years.

All of testator's six children survived him. Two were 25 at the time of his death and received their direct shares immediately. As to the other four who were under 25 at the time of his death, no contingency that would effect a divestiture of the direct share of any one of them occurred. They received their direct shares as they respectively arrived at the age of 25 years.

IV

The normal meaning of testator's language directing the disposition of the principal of the trust upon

Renee's remarriage or death is that the interest of each child in such principal, like the interest in the direct shares, becomes indefeasibly vested in such child upon reaching the age of 25 years.

It is difficult to conceive from the language disposing of the residuary estate or from the context of the whole will that testator intended a scheme for the disposition of the principal of the trust that was to be different from that provided for the disposition of the direct shares.

When he wrote his will, he had children who were 25 years of age or were fast approaching that age. When he clearly expressed his intention to vest the bulk of his estate in his children upon their reaching their 25th birthdays, we find nothing to support even an inference that he intended to delay the vesting of the remainders of the trust, representing a one-seventh share of his residuary estate, for 50 years after his death.

In fact, he specifically indicated a contrary intent. In directing in paragraph (5) that the direct share of any child or issue surviving him but dying before reaching the age of 25 years should be paid to the issue of such child or issue absolutely, testator added: "including, after the death or remarriage of my said wife, Renee M. Righter, such further portions of the principal of my estate to which, or the income from which, such children or such issue of any deceased children of mine would have been entitled had they outlived my said wife." To construe the will so as to give Margaret's issue, if she died a day before her twenty-fifth birthday, a larger interest in the trust than that to which Margaret herself would have been entitled if she had lived a day longer violates the whole tenor of the will.

If testator intended that the principal of the trust should go only to such of his children or issue as sur-

vived Renee's death or remarriage, he could have so stated. He didn't, although he knew how to expressly limit a gift intended only for living persons.

It is clear that when he referred to "children," he meant CHILDREN THAT SURVIVED HIM, that when he referred to "deceased children," he meant CHILDREN THAT PREDECEASED HIM, and that when he referred to issue, he meant, as he repeatedly stated, "ISSUE LIVING AT THE TIME OF MY DEATH OF ANY DECEASED CHILDREN OF MINE." His awareness of the importance of specific time designations for the identification of his beneficiaries is further indicated in paragraph (5) in which he directed that "Should any children or issue living at the time of my death of any deceased children of mine die before becoming entitled to their portions of the principal of my estate LEAVING ISSUE OF THEM SURVIVING, I direct said trustee to assign . . . UNTO SUCH ISSUE."

We conclude that the language and scheme of testator's will disclose an intention to give Margaret an indefeasibly vested remainder in one-sixth of the principal of the trust upon her attaining the age of 25 years and that she had such a remainder at the time of her death.

## V

If the language of the will were ambiguous or conflicting, or if testator's intent were for any reason uncertain, the rules of construction respecting vested and contingent interests would compel us to reach the same conclusion.

Let us first consider the direct shares.

A bequest to a number of persons not named, but answering a general description, is a gift to them as a class, unless a contrary intention appears in the will. Another criterion is that if the gift is " 'of an aggregate sum to a body of persons uncertain in number

at the time of the gift, to be ascertained at a future time, who are all to take in equal or other definite proportions, the share of each being dependent for its amount upon the ultimate number', the gift is to a class": Wood's Estate, 321 Pa. 497, 500, (1936).

An application of these tests leaves no doubt that testator intended a class gift. His bequests were to his children and issue and the specific beneficiaries and the amount each will receive are not ascertainable until all attained the age of 25 years, for paragraphs (5) and (6) provide a gift over in a situation where a child or issue dies before being entitled to his share of the principal.

Where a class gift to children and grandchildren, etc. is a per capita gift, the general rule is that irrespective of whether the gift is immediate or postponed, the class closes on the death of the testator, thus giving each member a vested interest. See Simes, Future Interests, sec. 91; Houston Estate, supra.

That testator intended the interests to vest is evidenced by the fact that the class membership and thus the size of the shares was fixed at his death: the residue of his estate was to be divided equally among his wife, his children living at his death, and issue of deceased children living at his death: per capita within the class of children, with some of the gifts postponed until a member of the class reached 25 years.

This rule is also stated that where a legacy is made payable at a future time, certain to arrive, and not subject to a condition precedent, it is vested where there is a person in esse at the time of testator's death capable of taking when the time arrives, although his interest may be defeated altogether at his own death: Reed's Estate, 307 Pa. 482 (1932).

There is nothing in the will which indicates that the testator attached any condition precedent. There are

no limitations in the gifts to "then living" members or the like, which would indicate that some contingency must occur before a beneficiary could enjoy his share. Rather, that the testator intended only a condition subsequent to the child's enjoyment of his share is shown by the syntax of paragraphs (5) and (6): "Should any child . . . die before becoming entitled to their portions of the principal . . . , I direct . . . . " Such phraseology clearly indicates the interest was vested in each member of the class, but enjoyment as to the four younger children merely was postponed until each attained 25.

The statement in McCauley's Estate, 257 Pa. 377, 382 (1917), is especially appropriate to the provisions in the will of testator: "Where a bequest is to a class, the vesting is not postponed because of uncertainty as to who, if any, may be the constituents of the class at the time fixed for the enjoyment of it."

This conclusion is further substantiated by the gift of income which testator provided for the benefit of each member of the class until 21 and then payable to each until 25 followed by their share of the principal outright. Each member acquired an immediate vested interest in the principal even though there was a possibility of divestment of either the income or principal prior to the time the principal was to be turned over: Mikaloff Estate, 400 Pa. 140, 143, (1960). Where a gift is postponed till a certain time, but there is a gift up to the time of distribution, there is a strong presumption that there is no condition that the legatee live to that time. See Simes, Future Interests, sec. 82.

It follows that death of a child in the divestiture provision of the will (paragraphs (5) and (6) ), at least as it relates to the direct shares, refers to the period between testator's death and the time a child attains the age of 25. When a child does not die within this period, his direct share of the estate vests indefeasibly. See

Cope Estate, 353 Pa. 306, (1946) ; Restatement, Property, §268, Illus. 7.

## VI

Paragraph (3) directs that the remainder interests under the trust are to be disposed of in the same manner as the direct shares.

To construe death of a child under the divestiture provisions as it relates to the remainder interests under the trust so as to extend the time for divestment to a period between testator's death and Renee's death would require a different dispositive scheme from that provided for the direct shares. This would run directly counter to paragraph (3) which creates the trust and directs that the principal of the trust, upon the termination of the life tenancy, shall be disposed of in the same manner provided for the disposition of the direct shares.

Where there is a life estate with a remainder to another at a certain age, the remainder vests when the remainderman attains a certain age, whether or not he subsequently outlives the life-tenant: Hunter, Vested & Contingent Interests, sec. 3 (k).

Since testator did not express a requirement that a child should survive the life-tenant, none will be implied: Smyth's Trust, 9 Fiduc. Rep. 179 (1959) ; Wolstenholme Estate, 26 D. & C. 2d 610 (1962) ; aff'd, 409 Pa. 380 (1963).

It is now axiomatic in Pennsylvania that a vested construction is favored over a contingent. The instrument must clearly show that a contingent interest was intended: Houston Estate, supra. In fact, the Supreme Court of Pennsylvania has stated that an interest will not be construed as contingent unless it is "impossible" to construe it as vested: Rickenbach Estate, 348 Pa. 121, 128, (1943).

We, therefore, enter the following

ORDER

And now, February 18, 1969,

(1) The United States of America is hereby dismissed as a party to these proceedings.

(2) It is hereby decreed that the Estate of Margaret Righter Smith, deceased, has an indefeasibly vested remainder in a one-sixth share of the principal of the trust created for the benefit of Renee M. Righter under Article Seventh, paragraph (3) of the will of Thomas M. Righter, deceased.