Merrick Estate.

Argued September 30, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Stephen H. Hutzelman,* with him *Meyer Rothwacks, Crombie J. D. Garrett,* and *Johnnie M. Walters,* Assistant Attorney General, for appellant.

*Donald L. McCaskey,* with him *James G. Park,* and *Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 18, 1971:

The issues in this case are (1) whether Eleanor D. Merrick at the time of her death in 1962 had any kind of a transmissible, and therefore taxable, interest in the remainder of the trust which her father, Herbert DuPuy, had created in 1916 for Eleanor's niece, Amy DuPuy McHenry, and Amy's surviving children and issue, and (2) whether the Orphans' Court had jurisdiction to determine this question sur a petition for declaratory judgment.

Herbert DuPuy was an exceedingly wealthy resident of Pittsburgh who had engaged extensively in real estate and financial matters. In the early part of 1916 (prior to April 26, 1916), four of Herbert DuPuy's five children were still alive. One of these four children was this decedent, Eleanor DuPuy Merrick, and another child was Amy DuPuy McHenry. Amy DuPuy McHenry died on April 26, 1916, shortly after giving birth to a daughter also named Amy DuPuy McHenry.*

---

* Eleanor D. Merrick will be hereinafter referred to as "Eleanor", and trustor's granddaughter, Amy DuPuy McHenry, will be hereinafter referred to as "Amy".

Within a relatively short period after Amy's birth, it was recognized that this granddaughter Amy was mentally incompetent. Amy is still alive, but continues in that unfortunate condition today.

On June 15, *1917,* Herbert DuPuy divided all of the stock in his two family-controlled real estate holding companies (Morewood Realty Holding Co. and Lansing Realty Holding Co.) into four equal parts each worth about $4,100,000. Herbert DuPuy gave three of these four parts outright to his three then living children, *and the fourth part or share to a trust which he created for the benefit of his granddaughter Amy.** Herbert DuPuy was the trustee under all of the trusts he created, and he personally managed the trust assets until his death in 1930.

We note, because it may become important, that Herbert DuPuy, who was not an attorney, personally drafted the trust which he created for Amy's benefit. This trust, after describing the property placed in the trust, pertinently provides as follows:

"That I hold the securities above mentioned, together with all the income derived from the same in trust to pay and deliver same with the accumulations thereon to my said granddaughter, Amy DuPuy McHenry, at such times and in such ways as are hereinafter mentioned.

"Reserving to myself and my successor or successors and at my and their discretion, the right to apply all or any proportion of the income arising from said securities to the education and maintenance of my said granddaughter during the life of this Trust.**

---

* On the same date, he created additional trusts, but in smaller amounts, for the benefit of his other five living grandchildren.

** The income from Amy's trust was always in excess of the amounts paid for her "education and maintenance," and when she became 21 a question arose as to who owned several hundred thousand dollars of accumulated income. The dispute was resolved by

"And upon the further trust, *upon the death of the said* [granddaughter] *Amy DuPuy McHenry,** to transfer and deliver *the said securities* or any such portion of the same as may then be in my hands or the hands of my successor or successors *to such child or children or the lawful issue of such deceased child or children of the said* [granddaughter] *Amy DuPuy McHenry as may be living at the time of her death,* in equal shares, free and discharged of all trusts whatsoever.

"And upon the further trust, *in the event of the said* [granddaughter] *Amy DuPuy McHenry dying without lawful issue living at the time of her death, to deliver the said securities* and their accumulations, or such as may then be in my hands or the hands of my successor or successors in this trust, free and discharged of all trusts whatsoever, *to my children,* H. Wilfred DuPuy, Charles M. DuPuy and *Eleanor DuPuy Merrick,* in equal shares, *and, in the case of the death of any of them, to his or her heirs and assigns."***

At Eleanor's death her heirs were four living children; Eleanor also had fifteen living grandchildren, all of whom were then minors.

In the course of the administration of Eleanor D. Merrick's estate, her executors filed a Federal Estate Tax return with the Internal Revenue Service. The Commissioner of Internal Revenue, after an examination of this return, issued a notice of deficiency against the Estate for additional estate tax in the amount of

---

family agreements in 1938 and 1940, which provided that $25,000 per year was to be used for the maintenance and benefit of Amy, with the balance divided equally among her eight cousins.

\* Italics throughout ours, unless otherwise noted.

\*\* The trusts for the benefit of the other grandchildren provided generally similar dispositive provisions, with the exception that one half of the trust property was distributable to each grandchild at age 21, with the remaining balance distributable to such grandchild at age 28.

$2,655,472.86. This tax deficiency was based on several items, the most important of which was the failure of the executors to include in Eleanor's gross estate the amount of $1,731,904.04, which the Commissioner claimed was the value of Eleanor D. Merrick's interest in the aforesaid trust which DuPuy created for Amy. On July 5, 1966, Eleanor's executors filed with the Tax Court of the United States a timely petition for the redetermination of this deficiency. One of the errors asserted by the executors in their petition was the inclusion in Eleanor's gross estate (upon which the Commissioners based the deficiency) of Eleanor's (alleged) interest in Amy's trust.

In addition to the above-mentioned petition in the Federal Court, Eleanor's executors filed, in the Orphans' Court of Allegheny County, a petition for a declaratory judgment seeking a construction of the trust for Amy to determine Eleanor's interest, if any, therein. The Orphans' Court, pursuant to Section 707 of the Orphans' Court Act of 1951, P. L. 1163, 20 P.S. §2080.707, authorized the United States, and also the Commonwealth of Pennsylvania (with respect to its Inheritance Tax interest), to appear as a party in interest, and a citation was issued to both the Commonwealth and the United States to show cause why the prayer of the executors' petition should not be granted. The United States, through the Department of Justice, filed preliminary objections, objecting to the power and jurisdiction of the Orphans' Court to entertain the said declaratory judgment proceeding. The Orphans' Court dismissed the preliminary objections and the United States took an appeal to this Court. The United States subsequently discontinued that appeal, and thereafter filed in the Orphans' Court an answer on the merits.

The United States then filed in the Orphans' Court a petition for reconsideration of that Court's earlier

decree dismissing the Government's preliminary objections. The Orphans' Court dismissed that petition. Thereafter, an appeal from that Court's order of dismissal was taken to this Court; we quashed the appeal. See *Merrick Estate*, 432 Pa. 450, 247 A. 2d 786. Thereafter, the Orphans' Court, after a hearing on the merits, dismissed the renewed objections of the United States to its jurisdiction, and held that Eleanor D. Merrick did not have a transmissible remainder interest in the trust created for Amy. From this Decree, the Government took this appeal.*

The facts are unusual and the questions presented are difficult.

### THE ORPHANS' COURT DECISION

The Orphans' Court held (1) that it had jurisdiction; (2) that a declaratory judgment proceeding was proper and appropriate; (3) that Eleanor DuPuy Merrick had to survive settlor's granddaughter Amy and Amy's lawful living issue, if any, in order to take any interest in the remainder of the trust; (4) that the gift over to Eleanor's heirs and assigns was substitutional and they took by purchase and not derivatively through Eleanor; and (5) consequently that Eleanor did not have a transmissible interest. The Orphans' Court further held that it should not now decide the meaning of the gift of the remainder to Eleanor's "heirs and assigns," *until Amy died with or without issue.* Cf. *Dick-*

---

\* In addition to exceptions filed by the United States, which were dismissed, an exception was also filed by the executors of Eleanor D. Merrick's estate, based on the failure of the Orphans' Court (Division), to determine who would be entitled to take under the trust at Amy's death. The Orphans' Court (Division) held that this issue was premature and should not be determined until the death of Amy. From this part of the Decree, the executors did not take an appeal.

*son Estate*, 378 Pa. 48, 50, 105 A. 2d 156; *Carter Estate*, 435 Pa. 492, 257 A. 2d 843.

The United States contends (1) that the sole issue in dispute between the parties is the liability of Eleanor's estate for Federal Estate taxes, and consequently the Orphans' Court has no jurisdiction; (2) that there was an adequate and more appropriate remedy in the United States Tax Courts or other Federal Courts and consequently the declaratory judgment proceedings will not lie; (3) that the determination by the Orphans' Court of Eleanor's interest in the remainder in the trust *before Amy's death was improper and erroneous;* (4) that State jurisdiction would strain the Federal-State relations and would result in forum shopping; and (5) that it would violate the Supremacy Clause of the United States Constitution (Article VI, Section 2).

Notwithstanding the Government's able brief, we disagree with its contentions. We believe that the declaratory judgment proceeding was permissible and proper under *Carter Estate*, 435 Pa., supra, and Section 6 of the Uniform Declaratory Judgments Act, infra, and that the Orphans' Court correctly interpreted DuPuy's trust for Amy, when it held that Eleanor had no interest therein at her death.

### JURISDICTION AND POWER TO GRANT DECLARATORY JUDGMENT

The Orphans' Court (Division) based its jurisdiction and its right and power to grant declaratory judgment relief on Section 6 of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended, July 25, 1963, P. L. 305, 12 P.S. §836, and on *Carter Estate*, 435 Pa., supra, and on *Commissioner v. Estate of Bosch*, 387 U.S. 456.

*Carter Estate*, 435 Pa., supra, which was relied upon by the Orphans' Court, is squarely in point and sustains

that Court's jurisdiction. In *Carter Estate,* the Court pertinently said (pages 495-496) : "The estate of Alfred V. Leaman, 3rd, and his beneficiaries are entitled to know now whether his estate and they are entitled to *any income\** from the Henry L. Carter trust. On the other hand, the principal of the trust, we repeat, is not distributable until the death of Carroll H. Carter, testator-trustor's last surviving child, and ordinarily the question of the distribution of principal would not be considered ripe for decision. Nevertheless, the provisions of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended, July 25, 1963, P. L. 305, 12 P.S. §831 et seq., appear to make the issue regarding principal presently justiciable. If Alfred V. Leaman, 3rd, had a vested interest in the principal of the trust created by his grandfather, it will be necessary (a) to include the value of this interest as part of his gross estate for Federal Estate Tax purposes, and (b) of course to pay additional estate taxes as a result. If his interest is merely a contingent one (or if he has no interest therein), it will not be necessary to include it in the Federal Estate Tax return to be filed by the executor of his estate.

"Section 6 of the Uniform Declaratory Judgments Act, as amended (12 P.S. §836), reads in pertinent part as follows : 'Relief by declaratory judgment or decree may be granted in all civil cases where . . . in any such case the court is satisfied that a party asserts a legal relation, status, right or privilege in which he has a concrete interest and . . . *that there is an uncertainty with respect to the effect of such asserted relation, status, right or privilege upon the determination of any tax imposed or to be imposed by any taxing authority, including the United States* . . . and the court is satisfied also that a declaratory judgment or decree will

---

\* Italics throughout *Carter Estate,* in the original.

serve to terminate the uncertainty or controversy giving rise to the proceeding.'

"It is an undisputed fact that the United States has decided not to participate in these proceedings. Nevertheless, Alfred's executor is obligated by Federal law to file a Federal Estate Tax return within a limited time period and should, therefore, be entitled to a resolution of these two issues. Purnell Estate, 424 Pa. 263, 226 A. 2d 488. See also, Commissioner v. Estate of Bosch, 387 U.S. 456, with respect to the effect of a State Court determination on the issue of Federal tax liability."

Commissioner v. Estate of Bosch, 387 U.S., supra, further demonstrates the untenability of the Government's contentions on the question of jurisdiction. That case held that the Federal Courts shall be bound by the property law decisions of the highest Court of a State, although not by the decisions of a lower State Court. Furthermore, we have recently specifically held that relief in and by a declaratory judgment petition and proceeding is available in the Orphans' Court at its discretion in a factual situation such as is here present. Cf. Eureka Casualty Company v. Henderson, 371 Pa. 587, 92 A. 2d 551; Carter Estate, 435 Pa., supra; Purnell Estate, 424 Pa. 263, 226 A. 2d 488. In Carter Estate and Purnell Estate, the United States had asserted Federal Estate Tax liability, and in both cases this Court held that a declaratory judgment proceeding in the Orphans' Court was a proper procedure for determining the property interest involved in a will or trust. We reaffirm these decisions and the principles involved therein.

In determining settlor's intent and the nature of Eleanor's interest in Amy's trust, the Orphans' Court relied principally on Burleigh Estate, 405 Pa. 373, 175 A. 2d 838. When the settlor (trustor) created this trust on June 15, 1917, Amy DuPuy McHenry was one year

old. At that time, settlor's children were H. Wilfred DuPuy, 36 years of age, Eleanor DuPuy Merrick, 34 years of age, and Charles M. DuPuy, 32 years of age. At Eleanor's death on February 23, 1962, settlor's granddaughter Amy was 45 years of age. In the light of these facts and circumstances, we believe that settlor did not intend to give Eleanor any interest whatsoever in the trust estate for Amy, unless Eleanor survived Amy and her children and issue, if any.

Decree affirmed; costs to be paid by the estate of Eleanor DuPuy Merrick.

Mr. Justice COHEN took no part in the decision of this case.