**ESTATE of Rosa B. SCHLOTTERER, Deceased**

v.

**UNITED STATES of America.**

**Civ. A. No. 75–760.**

United States District Court, W. D. Pennsylvania.

Oct. 7, 1976.

Tice Ryan, Pittsburgh, Pa., for plaintiff.

Henry Barr, Pittsburgh, Pa., Stephen Lyons, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

OPINION

KNOX, District Judge.

We once again have before the court a suit for refund of federal estate taxes involving "one of the more abstruse and obscure branches of the Pennsylvania law of decedent's estates".[1] Once again we have the esoteric question as to how to treat for federal tax purposes a bequest of personal property to a life tenant for life with remainder over to a remainderman. Pennsylvania law, prior to the passage of the Pennsylvania Estates Act of 1947, 20 Purdon's P.S. § 301.13 effective January 1, 1948 and applicable to dispositions occurring on and after that date, held that such a bequest constituted the life tenant as a debtor to the remainderman in the amount of personal property received at distribution by the life tenant. The relationship was specifically held as that of debtor and creditor not trustee and beneficiary. The Estates Act of 1947, supra provides that in such cases a life tenant "shall be deemed to be a trustee of such property, and not a debtor to the remainderman . . . ".

When *Purnell v. United States,* supra, was decided, it appeared that these problems would gradually come to an end with the lapse of time. However, since the Estates Act of 1947, is applicable only to dispositions made on and after January 1, 1948, it is apparent that, like the rule in Shelley's case abolished in 1935 in Pennsylvania, problems concerning it will continue to arise occasionally perhaps during the remainder of this century. For Example in *Leggett's Estate v. U.S.,* 418 F.2d 1257 (3d Cir. 1969) the life tenant survived the decedent by 51 years when the problem of the federal estate tax arose upon her death.

The instant case arises on a claim for refund filed in the Estate of Rosa B. Schlotterer who died testate September 1, 1972, leaving a last will and testament which is in evidence in this case. She was life tenant during her lifetime of a bequest of personal property left to her in the estate of her

1. *Purnell v. United States,* 332 F.Supp. 65 (W.D.Pa.1971).

husband George K. Schlotterer who died testate March 29, 1943.

The parties have stipulated as to the decree of distribution of the Estate of George K. Schlotterer, Deceased, and this shows a balance for distribution on January 5, 1944 of $57,827.83 which was distributed "to Rosa B. Schlotterer, widow under second paragraph of the will said balance viz: . . "(listing the securities)". The amount distributed to Rosa in George's Estate at the time of her death had a net value according to the stipulation of the parties of $188,715.13 which amount was excluded from Rosa's federal estate tax return.

The pertinent portions of George's will are as follows:

"SECOND: All the rest, residue, and remainder of my estate, real, personal, or mixed and wheresoever found and situate I give, devise, and bequeath without bond or other security unto my wife, ROSA B. SCHLOTTERER, for her use and benefit and to receive the rents, issues, profits, and income thereof during the term of her natural life with power of consumption of such portions or all said residuary estate to the extent deemed by her to be desirable not only *for her support and maintenance but also for her comfort and pleasure* without recourse to any property of her own; and after her death any thereof not so used and consumed or all said residuary estate if my said wife should predecease me, I hereby give, devise, and bequeath equally share and share alike to my daughter, Jane Schlotterer (Cooper) Wilson, one-half and my son George E. Schlotterer, the other one-half, the share of either of them dying before me or before my wife to go to his or her lawful issue equally per stirpes."

"I direct that my said wife shall have full power to make, execute, acknowledge, and deliver all deeds and other instruments proper in the law for the outright and absolute granting, conveying, assigning, and transferring any realty or personalty as she sees fit, together with the right to pledge or mortgage any of said property but otherwise none thereof shall be liable for her debts. Further I direct that such portions not so used and consumed by her shall following her death go directly to my other named beneficiaries without further administration of my estate. Any person dealing with my said wife in respect to said residuary estate is in no wise obligated to see to the application by her of the proceeds of any sale, transfer, exchange, or assignment. *Appreciation in value of any property not consumed shall belong with that property and go to the remaindermen. No depreciation or losses shall be charged to the life tenant nor shall she and her estate be accountable in any wise whatsoever beyond turning over unconsumed property.* Evidences of title may be taken or issued in the name of my wife and her powers and authorities shall include the power to make gifts to any persons designated in this my will as primary or secondary beneficiaries." (Emphasis by the court.)

In the third paragraph of Rosa's will she provided:

"THIRD: With respect to the life estate in my favor under the last will and testament of George K. Schlotterer, my deceased husband, I direct my executors to transfer, assign, and set over the unconsumed assets unto the persons designated as remaindermen under my husband's last will and testament without the necessity of accounting and without any further administration expenses whatsoever in such regard."

In accordance with this allocation the Orphan's Court Division of the Court of Common Pleas of Allegheny County, Pennsylvania by its decree of distribution entered October 16, 1973 distributed the assets in Rosa's Estate in two categories: first, those derived from the Estate of George K. Schlotterer and secondly, those which had been solely owned by the decedent. The decree provided that the total of $188,715.13 be awarded one-half to Jane S. Wilson, daughter and one-half to George B. Schlotterer "as remaindermen under the last will and testament of George K. Schlotterer, deceased."

It is the government's contention that this will of George B. Schlotterer, deceased constituted Rosa as trustee of the assets so received, not a debtor to the remainderman creditors under *Powell's Estate,* supra, and since such trust was subject to being consumed by the decedent at any time during her life that the same constituted a general power of appointment and hence is subject to taxation in the full amount in her estate pursuant to the provisions of Section 2041(a)(2) of the Internal Revenue Code of 1954.[2]

Unlike *Purnell v. U.S.,* supra, we do not have here any authoritative determination of the nature of the interest created by the will of the decedent by the Supreme Court of Pennsylvania as was the situation in that case. See *Purnell's Estate,* 424 Pa. 263, 226 A.2d 488 (1967) which authoritatively determined that the interest of the life tenant was that of debtor-creditor. The court of course was bound by the determination of the Supreme Court of Pennsylvania under the decision of the United States Supreme Court in *Commissioner v. Bosch Estate,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). The federal courts therefore have to determine the nature of the interest based upon their own appraisals of the law of Pennsylvania.

 It will be noted that the will provides that "appreciation and value of any property not consumed shall belong with that property and go to the remaindemen (sic). No depreciation and losses shall be charged to the life tenant nor shall she and her estate be accountable in any wise whatsoever beyond turning over unconsumed property".

This language completely takes the interest given in this will out from under the Pennsylvania debtor-creditor doctrine and makes it a trust. In the debtor-creditor relationship case the life tenant is responsible for the dollar value of the amount of securities turned over to her at the time of distribution. See *Purnell v. U.S.,* supra. *Purnell's Estate,* supra, *Powell's Estate,* supra. The life tenant in such circumstances retains all appreciation in values of securities stock splits, stock dividends, etc. See *Powell's Estate,* supra. On the other side of the coin the life tenant is held to the cash value of the amount distributed at the time of distribution even though the securities may have decreased in value or have become worthless. The language contained in George's will is entirely at variance with the debtor-creditor relationship and is consistent only with a trust.

It was stated at the argument and hearing in this case without dispute that the life tenant at first kept separate accounts with respect to the securities and money distributed to her under George's Estate but in

2. "Section 2041. *Powers of appointment.*

(a) [as amended by Sec. 18(a)(2)(H), Revenue Act of 1962, P.L. 87834, 76 Stat. 960]. In *general.*—The value of the gross estate shall include the value of all property

\* \* \* \* \* \*

(2) *Powers created after October 21, 1942.* To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

\* \* \* \* \*. \*

(b) *Definitions. For purposes of subsection (a)*

(1) *General power of appointment.* The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment."

later years she comingled them with her other assets. The assets from George's Estate however, could be traced and were segregated in Rosa's Estate.

Consonant with the holding of the Court of Appeals for this Circuit in *Leggett's Estate v. United States,* 418 F.2d 1257, 3 Cir. reversing 293 F.Supp. 22 (W.D.Pa.1969) this court determines that the interest taken by Rosa in George's Estate was a trust. This case however differs from *Leggett's Estate* in that here we have a life estate with power to consume and apply the principal for the life tenant's support and maintenance, comfort and pleasure "without recourse to any property of her own", whereas in *Leggett's Estate* the life tenant had no power of consumption. It was held by the Circuit that although this may have been a debtor-creditor relationship as determined by the lower court, nevertheless by her conduct the life tenant had renounced and disclaimed her rights under the debtor-creditor relationship and constituted herself a fiduciary for the remaindermen with their full consent. It was pointed out that no particular language is necessary to constitute a trust and this approach has been recognized many times by the Pennsylvania Supreme Court most recently in *Buchanan v. Brentwood Savings and Loan Association,* 475 Pa. 135, 320 A.2d 117 (1974).

By determining that the interest taken by the life tenant here was a trust for her life we do not however end the controversy between the estate and the government because the government claims that she had such powers over the principal as to amount to a general power of appointment under 26 U.S.C. § 2041(a)(2). It will be noted again that the will gives the life tenant full power to make, execute and acknowledge deeds and other instruments conveying or transferring any realty or personalty together with the right to pledge or mortgage the property. No person dealing with her was obligated to see to the application of the proceeds. The appreciation went to the

remaindermen and no depreciation or losses were to be charged to the life tenant. She also had the right to make gifts to any person designated as primary or secondary beneficiaries. It was stipulated that the only gift tax return filed by her was for the year 1966 covering gifts to grandchildren a copy of which is attached to the stipulation of facts as Exhibit G. These gifts totalled $15,233.46 less exclusions of $14,182.68 leaving a total of $1,050.78 which was applied against her lifetime specific exemption. Treasury regulations 20.20411(b)(1) state that powers of appointment:

> "includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. *For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment.*"

It is obvious that the Internal Revenue Code contains these specific provisions with respect to general powers of appointment and the taxability of property subject to them in the estate of the donee of the power of appointment for the reason that without these a loophole would be opened in the estate tax laws. A decedent or settlor of a trust could provide for complete dominion, power and control over a life estate by the life tenant as trustee as in this case with complete power to appropriate the same for his own use and yet avoid a tax in the estate of the life tenant when for all practical purposes such property was the life tenant's during her lifetime.[3] The regulations further provide that a power given to a decedent to affect the beneficial enjoyment of trust property by terminating the trust is a power of appointment. There are detailed provisions further in the regulation as to what powers do or do not constitute a power of appointment. For instance it is provided "a power to amend only the ad-

---

**3.** For general discussion see Rabkin & Johnson Federal Income, Gift and Estate Taxation Vol. 4 ¶ 52.08A and 52.08B. A general power effec-

tive as in this case after October 21, 1942 is taxable whether exercised or not. 52.08(A)(1).

ministrative provisions of a trust instrument which cannot substantially effect the beneficial enjoyment of the trust property or income is not a power of appointment". (Reg. 20.20411(b)(1)) The powers given to the life tenant in this case go far beyond this and these are dealt with by the regulations in 20.20411(c)(2) which reads as follows:

"(c) *Definition of 'general power of appointment'*

(2) *Powers limited by an ascertainable standard.* A power to consume, invade, or appropriate income or corpus, or both, for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent is, by reason of section 2041(b)(1)(A), not a general power of appointment. A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words "support" and "maintenance" are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's "support", "support in reasonable comfort", "maintenance in health and reasonable comfort", "support in his accustomed manner of living", "education, including college and professional education", "Health", and "medical, dental, hospital and nursing expenses and expenses of invalidism". In determining whether a power is limited by an ascertainable standard, it is immaterial whether the beneficiary is required to exhaust his other income before the power can be exercised."

■ There is no question that if the power to consume either income or corpus is limited by an ascertainable standard such as provisions for the life tenant's health, education, support or maintenance in her usual comfortable circumstances, these are ascertainable standards as in the case of charitable deductions where a life estate or estate for years is reserved or given to a life tenant. This is the provision of the Code itself in 26 U.S.C. § 2041(b)(1)(A) pursuant to which the regulation in question was adopted.[4]

The leading case on this subject in this circuit is *Strite v. McGinnes,* 330 F.2d 234 (3d Cir. 1964) wherein the will gave property to three sisters in trust for each other with power "any time necessary or advisable in order to provide for *the reasonable needs and proper expenses* or the *benefit or comfort*" of the other two sisters. The court said:

"We look rather to the grant of power given to the decedent and determine whether it is clearly limited in its exercise to matters relating to health, education, support and maintenance. The initial step is to determine in light of local law, the interest conveyed to the decedent under this trust, i. e., the extent to which, consonant with the testamentary trust provision, the decedent could invade and consume the principal. *Morgan v. Commissioner,* 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940); *Commissioner of Internal Revenue Serv. v. Ellis' Estate,* 252 F.2d 109, 113 (3 Cir. 1958); *Hoffman v. McGinnes,* 277 F.2d 598 (3 Cir. 1960)."

The court then went on to determine the meaning of the words "benefit" and "comfort" under Pennsylvania law and it was pointed out that "comfort" is not limited solely to the necessaries of life but "may include things which bring ease, contentment or enjoyment. It is something more than supports a minimum and durable standard of living." "Benefit" was held to be a broader word than support and to include "advantage, gain or profit".

■ It is obvious that in the present case the will, which provides for the life tenant

4. For discussion of the legislative history of this section see *Strite v. McGinnes,* infra.

to have power to apply the principal for her comfort and pleasure, is much broader than the will considered in *Strite v. McGinnes.* "Pleasure" is defined in Webster's Seventh Collegiate Dictionary as meaning a state of gratification or enjoyment. Like the words "pursuit of happiness" in the Declaration of Independence, it is difficult to apply the term to any given individual since what gives pleasure or happiness is a subjective matter. As stated in *Strite v. McGinnes* (quoting from the lower court) " . . . it is difficult to believe that a Pennsylvania court would place any grudging limitation on the breadth of the power to consume". It is likewise difficult to imagine anything which would limit by court action the discretion of the trustee (life tenant) in making expenditures under the will now before us. Large sums of money could be consumed in expensive travel or the purchase of valuable works of art or expensive housing accommodations and still be within the connotation of the word "pleasure" as contained in this will. See also *Doyle v. United States,* 358 F.Supp. 300 (E.D.Pa.1973).

In *Strite v. McGinnes* the court further concluded with this language

"Finally the taxpayer contends that Lillian Cree did not have a general Power of Appointment over the corpora of her sisters' trusts because she held that power as trustee. We believe, under the facts here, that it is the possession of the power of appointment over property that governs the tax consequences. *Hurd v. Commissioner,* 160 F.2d 610, 613 (1 Cir. 1947). *Welch v. Terhune,* 126 F.2d 695 (1 Cir. 1942). That Lillian Cree was sole trustee under Katherine's will, and co-trustee with the Commonwealth Trust Company (a non-adverse trustee) under Mary's will, does not affect the taxability of whatever power she had to appropriate property to herself."

Our conclusion is that the interest taken by Rosa Schlotterer under the estate of her deceased husband George K. Schlotterer was that of trustee of the property for and during the term of her life with unlimited powers to apply the same for her comfort and pleasure and hence this is a general power of appointment which renders the amount derived from the George K. Schlotterer estate to wit: $188,715.13 taxable in her estate. It appears by the stipulation that the tax on this amount in the sum of $50,381.99 was paid on November 25, 1974 and the interest thereon on December 24, 1974. It is admitted that claims for refund were duly filed and the claim was disallowed on December 2, 1974. Thereafter, this suit was duly brought to recover refund of the amounts paid.

Our conclusions as to the nature of the interest taken by the life tenant and the extent of the power possessed by her make it unnecessary to consider the effect of deductibility of the amount originally received on distribution from the Estate of George K. Schlotterer under the debtor-creditor relationship theory.

The suit for refund must be denied and summary judgment entered for the defendant United States of America.