# Reiff and Umstead's Appeal.

60 361.
198 342'

A testator gave the residue of his estate to his executors in trust for his wife for life, and after her death he provided "all my estate * * I give * * unto my seven children in equal shares; * * the shares so aforesaid given to my said daughters, I order * * shall be held by them respectively in trust to take the income and to appropriate the same respectively * * for their own sole and separate use whether covert or sole for their lives," and at the decease of any one her share to her children. He further directed that his executors might at the request of the widow divide in her lifetime so much of his personal estate as she might designate amongst all his children, so that each should have an equal share "to be held by them, their heirs and assigns," with proviso that the shares of his daughters should "be held by them in trust for the same term and under the same powers, &c., as are before mentioned of their respective shares of my estate." *Held*, that the daughters took but a life estate in the legacies.

January 20th 1869. Before THOMPSON, C. J., AGNEW and SHARSWOOD JJ. READ, J., absent. WILLIAMS, J., at Nisi Prius.

Appeal from the Orphans' Court of *Montgomery county*: No. 303, to January Term 1869.

In November 1868 Elizabeth P. Reiff, Letitia P. Reiff and Susanna P. Reiff, daughters of John Reiff, deceased, presented their petition to the Orphans' Court, setting forth that the decedent died on the 15th day of April 1855, leaving a widow, Mary, and issue seven children, three of whom are the petitioners; and leaving a will by which he devised and bequeathed the residue of his estate to his executors in trust to permit his wife to receive

the income for her life, and after death to sell all his estate, which he gave to his seven children in equal shares. He further directed as follows :—

"The shares so as aforesaid given to my said daughters, to wit, Elizabeth, Letitia and Susanna, I order and direct shall be held by them respectively in trust to take and receive the income and interest thereof, and to appropriate the same respectively to their own use each and every year for their own sole and separate use, whether covert or sole, for and during the term of their natural lives respectively, and at the decease of any or all of them in trust to pay over the share of her so dying to her children, or children who may then be living, or the issue of such as may be dead, and in default of leaving any child or the issue of any child then in trust, to pay the same to my surviving children and the issue of such of them as may be deceased, such issue taking the share to which their deceased parent would have been entitled if living." "I further order and direct that if any of my said above-named children shall die leaving issue, such issue shall take the share of his, her or their deceased parent, and in case any of my said above-named children shall die, leaving no issue, then the share of him, her or them so dying shall be distributed among my surviving children, and the issue of such as may be deceased, such issue taking and equally among themselves dividing the share to which their deceased parent would have been entitled if living." "I further order and direct, that if desired by either or all of my said daughters, that it shall and may be lawful for them or either of them to invest the whole or any part of the shares so as aforesaid bequeathed to them in the purchase of real estate, to be held by her or them respectively for her or their sole and separate use under the same trusts, provisoes and limitations, and during the same terms as are hereinbefore mentioned of and concerning their said shares," with power to his executors, upon the request of his wife, to divide so much of his personal estate, consisting of bonds, mortgages and other securities as she should designate to and among all his said children, so that each of them should have an equal share of the same, "and upon such division the share of each of my said children shall be held by them respectively, their heirs and assigns : Provided, however, that the shares thus coming to my said daughters shall be held by them in trust for the same term, and under the same powers, provisoes and limitations as are before mentioned, of and concerning their respective shares of my estate." He appointed his wife Mary and his son Jacob P. Reiff and John H. Umstead, executors, &c. The widow died on the 15th of June 1868, and the surviving executors had on hand $7000, which they were prepared to pay over to the persons legally entitled under the will, but they were willing to pay to the petitioners only the interest of the one-seventh part of said fund; whereas the petitioners claimed that they were

entitled, each of them, to the one-seventh part of the said fund of $7000, absolutely under the will of the said testator.

The petitioners prayed for a citation to the executors, and a decree that they should pay to each of them absolutely one-seventh part of the fund in their hands.

Jacob P. Reiff, one of the executors, answered, admitting the facts set out in the petition; but averring that the petitioners were "entitled only to the interest on each of their shares during life, and that he is unwilling to pay them the whole, or any portion of their shares, until such security for the same shall be given as may be required by the court to secure the principal of the fund to the legatees over."

The court (Chapman, P. J.) decreed "that the respondents pay to the petitioners the one equal seventh part of the sum of $7000, admitted to be in their hands, absolutely."

The executors appealed, and assigned this decree for error.

*G. R. Fox*, for appellants.—The daughters have but a life estate. The property is converted into personalty. But for the word *trust* there could be no doubt that they must give security: Act of February 24th 1834, § 49, Pamph. L. 82, Purd. 303, pl. 184; Clevenstine's Appeal, 3 Harris 495; Duval's Appeal, 2 Wright 120.

*D. H. Mulvany*, for appellees.—The first part of the will makes an absolute gift; another clause places all the children on the same footing. To make all harmonize, the estate in the first takers must vest absolutely: Billing *v*. Billing, 5 Simon 232; Harrison *v*. Foreman, 5 Ves. 207; Cambridge *v*. Rous, 8 Id. 13; Hinckley *v*. Simons, 4 Id. 161; 1 Roper on Leg. 609.

The opinion of the court was delivered, February 1st 1869, by

SHARSWOOD, J.—It is beyond any question that the petitioners took under the will of their father, after the death of the widow, express estates for life. What is contended to be in the first part of the will an absolute bequest, "all my estate of whatsoever kind the same may be, I give, devise, and bequeath unto my seven children in equal shares," is qualified by the words which immediately succeed "in manner following, to wit:" and that is as to the shares of the sons "to hold to them respectively, their heirs and assigns forever," but as to the shares of the daughters, they "shall be held by them respectively * * * * for and during the term of their natural lives respectively" with remainders to their children. There is another clause in the subsequent part of the will which is supposed to contradict this, and place all the children upon an equal footing. It is that in which he authorizes his executors before the death of his wife at her request, to divide so much of his personal estate consisting of bonds, mortgages, and

other securities as she might designate among all his children, "so that each of them shall have an equal share of the same, and upon such division, the share of each of my said children shall be held by them respectively, their heirs and assigns;" but this clause is immediately followed by a proviso, which limits the shares of the daughters according as he had before directed: "Provided, however, that the shares thus coming to my said daughters shall be held by them in trust for the same term and under the same powers, provisions and limitations as are before mentioned, of and concerning their respective shares of my estate." Construing the whole will together there is no inconsistency in it. There is no absolute gift to the daughters in any part.

Nor do the words "in trust" vary the construction. For this, Clevenstine's Appeal, 3 Harris 495, is a direct authority. The testator did not intend to make his daughters trustees for themselves, and for their children after their death. The words were introduced here as in the case cited under some vague idea that they were necessary. It was at one time the received opinion that a gift or bequest for the separate use of a married woman was not lawful without the interposition of trustees, but that opinion has been long since exploded: Hill on Trustees 420. Indeed, since the Act of April 11th 1848, "to secure the right of married women" (Pamph. L. 536), all property which may be owned by a married woman at the time of her marriage or which shall accrue to her afterwards, "shall be owned, used and enjoyed by such married woman as her own separate property." The testator therefore in providing that the shares of his daughters "shall be held by them respectively in trust to take and receive the income and interest thereof, and to appropriate the same respectively to their own use each and every year for their own sole and separate use whether covert or sole," did nothing which the law would not have done without any such provision, except as to their power of disposition under the ruling of The Pennsylvania Company *v.* Foster, 11 Casey 134.

The existence of a trust in the tenant for life for the remaindermen was not considered in Clevenstine's Appeal, to take the case out of the purview of the forty-ninth section of the Act of February 24th 1834 (Pamph. L. 83), which enacts that "whenever personal property is bequeathed to any person for life or for a term of years or for any other limited period or upon a condition or contingency, the executor of such will shall not be compelled to pay or deliver the property so bequeathed to the person so entitled, until security be given in the Orphans' Court, having jurisdiction of his accounts in such sum and form as in the judgment of such court shall sufficiently secure the interest of the person entitled in remainder whenever the same shall accrue or vest in possession."

Decree reversed at the cost of the appellees.