Verner S. PURNELL, Executor of the Estate of Anna S. PURNELL, Deceased,

v.

UNITED STATES of America.

Civ. No. 69–246.

United States District Court,
W. D. Pennsylvania.

Sept. 23, 1971.

Dougherty, Larrimer, Lee & Hickton, Pittsburgh, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION and ORDER

KNOX, District Judge.

This suit for refund of federal estate taxes involves one of the more abstruse and obscure branches of the Pennsylvania law of decedent's estates. The rule formerly was that where under a will, personal property was awarded directly to a life tenant for life with remainder over, the life tenant was treated as a debtor to the remainder man in the amount of the personal property received by the life tenant. The relationship between life tenant and remainder man was that of debtor and creditor, not trustee and beneficiary. Fortunately, the number of cases involving this question will drastically diminish as time goes on because under the Pennsylvania Estates Act of 1947, 20 Purdon's Pa. Statutes, 301.13, effective January 1, 1948, and applicable to dispositions occurring on and after that date, it is provided that a life tenant in such a situation "shall be deemed to be a trustee of such property, and not a debtor to the remainder man * * *".

We are, however, here concerned with the will of Ansby V. Purnell who died April 21, 1941. In his will (p. 106(a) of record in Supreme Court of Pennsylvania which was offered in evidence in this case, Exhibit 12), the decedent, after mentioning certain pieces of real estate, provided:

"Second: All the rest, residue and remainder of my estate, real, personal and mixed, I give devise and bequeath to my wife, Anna S. Purnell, for and during her natural life with remainder upon her death to my son, Verner S. Purnell.

"Third: I direct that my personal estate be distributed to my wife, Anna S. Purnell, as life tenant without requiring her to give bond therefore."

This language in the will has clearly and conclusively been construed by the Supreme Court of Pennsylvania to set up a debtor-creditor relationship between Anna S. Purnell and her son, Verner S. Purnell, plaintiff herein, to the extent of property received by Mrs. Purnell from the estate of her husband. See Purnell's Estate, 424 Pa. 263, 226 A.2d 488 (1967).

Anna S. Purnell, the life tenant, died February 5, 1962, and the amount in

which she was indebted to the remainder man is clearly to be allowed as a deduction in the federal estate tax return in her estate as filed by the plaintiff herein her executor.[1] The question, however, with which we are confronted is "What is the amount of this deduction"? The determination of this question depends upon whether you adopt the figures evaluating the personalty received by Mrs. Purnell as of the date of Mr. Purnell's death on April 12, 1941, or the value of these assets at the time of distribution on May 8, 1943. It is claimed that the securities constituting the bulk of the property received by the life tenant had appreciated in value during the intervening two years and the estate naturally claims that the amount to be allowed as a deduction is to be calculated as of the date of distribution. The government, however, contends that date of death values control. For reasons herein set forth, we hold that date of distribution values control but in this case the estate is bound by the values set forth in the 1943 distribution decree.

■ An examination of the Pennsylvania cases dealing with this debtor-creditor relationship shows that the life tenant is responsible to the remainder man for the amount received in distribution from the estate of the original testator. This amount is not subject to diminution for expenses of settlement of the estate of the life tenant nor for compensation to her for care of the fund and is not concerned with increase or decrease in values of securities or gains or losses from sales thereof. This can be distilled from the following cases: Reiff's Appeal, 60 Pa. 361; 124 Pa. 145, 16 A. 636 (1889); In re Letterle's Estate, 248 Pa. 95, 93 A. 935 (1915); In re Weir's Estate, 251 Pa. 499, 96 A. 1086 (1916); In re Kirkpatrick's Estate, 284

Pa. 583, 131 A. 361 (1925); In re Gillett's Estate, 130 Pa.Super. 309, 197 A. 517 (1938); In re Powell's Estate, 340 Pa. 404, 17 A.2d 391 (1941).

For instance, in Weir's Estate, supra, it was held "the specific property never becomes the subject of credit in an accounting". In Letterle's Estate, supra, it was pointed out that the assets handed over to the life tenant in the decree of distribution were valued at $12,010.58 and this was what she was responsible for regardless of losses and gains in sales of securities.

In Kirkpatrick's Estate, supra, the decree distributing the estate to the life tenant erroneously labeled it a trust but the Supreme Court treated this as a gratuitous statement in the decree and held that what the life tenant is liable for is the amount received by her.

Again, in Gillett's Estate, supra, it was held that the life tenant was responsible for the value of the estate as received by her. "The net amount and value of the property which she took possession of * * *."

Again, in Powell's Estate, supra, one of the leading cases in recent years in this field, there was a life estate with power to consume. The inventory showed the original value of $74,167.50 including certain securities which turned out to be the cause of the dispute. The second and final account filed five years after death of the original decedent showed the balance to be $36,391.28 which was awarded to the life tenant subject to her power to consume. It was held that the life tenant "was entitled *to take the balance as shown by the account* and assume a debtor creditor relation to the remaindermen for that sum less any part she should consume". (emphasis added). The court said "She is responsible to them only for the value of the estate *at the date of distribution thereof*".

---

1. "* * * The value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts * * * for claims against the estate * * * as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered." I.R.C. § 2053(a), 26 U.S.C. § 2053(a).

In the last of this line of cases being the very estate which is at issue in this case, we find that the District Director of Internal Revenue was made a party to a declaratory judgment proceeding, appeared by the United States Attorneys Office and filed answer thereto. The government also appeared and argued the case on appeal in the Supreme Court. It appears from the opinion by Chief Justice Bell that on April 23, 1943, the auditing judge entered a decree of distribution which directed Ansby's executors to distribute to "Anna S. Purnell life tenant" the stocks and bonds contained in his residuary estate which were valued at $97,785.50.

The court indicates that it even considered the very question that was before us because it is stated "exactly what property Anna took at her husband's death and in what capacity is important, because between *1941* and 1962, Ansby's property had very greatly enhanced in value as a result of stock dividends, stock splits and the increase in the market value of the stocks and securities which Anna received from her husband's estate. In the Supreme Court opinion, it appears that the government was claiming a tax on the increase in value but the court held that she was liable to "the remainderman *for the value of the property she actually received at the date of distribution*". The court further pointed out "she also elected to take in kind the stocks and bonds which *were listed at their value at the time of distribution to her.*" (Emphasis supplied.)

Many of these cases discuss the Act of May 17, 1871, P.L. 269 (see also the Act of February 28, 1834, P.L. 83, Sec. 49) later supplanted by similar sections in the later Acts of Assembly dealing with decedent's estates whereby the life tenant could be required to give bond in such a situation for the amount of assets received by her. We find in many of these cases that the original will excused her from giving bond or that no bond was required and this was acquiesced in by the remainder man, amounting to a waiver, but it was held in Powell's Estate, supra, that the fact that she failed to give bond at the time of the decree of distribution was immaterial. It will be noted that in Ansby V. Purnell's will the giving of bond was excused. If, however, Anna had been required to give bond, it is obvious that the bond which she would have had to have given was in the amount of the stocks and bonds received by her from Ansby's Estate, to wit, in the amount of $97,785.50 as determined by the decree.

In the instant case, it is obvious that both the government and the estate are bound by the adjudication of the Supreme Court of Pennsylvania, since this was an adversary proceeding in which the government participated. Under Internal Revenue Code, Section 2053(a), and regulations thereunder, claims valid under State law are deductible in determining the net estate. If the state court passes on the validity of a claim, it must be allowed. While there is some doubt in the cases as to the effect of allowance of a claim pro forma without any adversary proceedings, these cases are obviously inapplicable here except as to the later account hereinafter mentioned. See First-Mechanics National Bank of Trenton v. Commissioner of Internal Revenue, 117 F.2d 127 (3d Cir. 1940); Beecher v. United States, 280 F.2d 202 (3d Cir. 1960); Babcock's Estate v. Commissioner of Internal Revenue, 234 F.2d 837 (3d Cir. 1956). It is indicated in these cases that even if the validity of the claim has not been adjudicated by the state court it may be determined on the merits by the Federal court.

The problem in this case is caused by ignoring the plain wording of the original decree of distribution in the Estate of Ansby V. Purnell which was entered by the Orphan's Court of Allegheny County on April 28, 1943. (p. 94a Ex. 12) This order of distribution plainly states:

"SCHEDULE OF DISTRIBUTION:

Balance for distribution

To: Anna S. Purnell, life tenant (sic) $97,785.50."

This figure is also in accordance with the 1965 first and final account of Verner S. Purnell, "surviving trustee under will" which shows as follows: (96a)

4–28–43 Principal received from Estate of Ansby V. Purnell.. $98,395.50
Additional Assets

11–13–47 Proceeds sale of real estate 914 Columbus Avenue, Pittsburgh, Pennsylvania, to F. G. Woodward, D.B.V. 2972–508     4,500.00
           ——————
           $102,895.50

(The discrepancy between the figure of $98,395.50 and $97,785.50 distributed to Anna S. Purnell life tenant is accounted for by the first two items in the schedule of distribution page 94a totalling $610 which reduces the balance to $97,785.50.)

The record further shows that on April 13, 1964, Verner S. Purnell (also plaintiff in the instant case) filed a petition for declaratory judgment against John H. Bingler, District Director of Internal Revenue and the United States. See page 2a of record. The United States filed an answer to this petition and was permitted to intervene and become a party to these proceedings, on May 25, 1964 (p. 9a).

Verner S. Purnell did file exceptions to the decree denying the prayer of the petition for declaratory judgment and the same were dismissed by decree of the court en banc on March 7, 1966 (122a).

Verner S. Purnell then appealed to the Supreme Court as previously indicated and that court affirmed the order of the lower court on January 4, 1967. See Estate of Purnell, 424 Pa. 263, 226 A.2d 488 (1967). It is significant that the Supreme Court also emphasized that the value at which Anna S. Purnell life tenant took the residuary estate was $97,785.50.[2]

Verner S. Purnell, plaintiff herein has sought to avoid the impact of these determinations by the Orphan's Court and the Supreme Court by filing a subsequent account in the Estate of Anna S. Purnell in the Orphan's Court Division of the Court of Common Pleas of Allegheny County, Pennsylvania, which account was confirmed January 16, 1969. In this he sought to step up the figures from the 1943 account which had been confirmed absolutely by the Orphan's Court on April 28, 1943, even though no exceptions had been filed and this decree had long ago become final and was probably not even subject to review under Pennsylvania law. These same figures were used in the 1962 account (95a). It will be noted that Mr. Purnell was the one who filed this account originally and was therefore responsible for the figures therein contained.

The account itself is Exhibit 5 in the instant proceedings and the decree is found in Exhibit 8. These exhibits were received over the government's objection as being irrelevant and immaterial. In view of the disposition we make of this case it becomes unnecessary to make a final ruling on their admissibility except to say that we have considered them at length and determine that they do not affect the outcome of this case.

In the account on page 3, Mr. Purnell reported the existence of a debt due by

---

2. The Supreme Court had this to say:
  "We deem it necessary to discuss several facts since they are somewhat unusual. Ansby's widow elected to take under her husband's will; moreover, *she also elected to take in kind* the stocks and bonds which *were listed at their value at the time of distribution to her.* On April 28, 1943, the auditing Judge entered a Decree of Distribution which directed Ansby's executors to distribute to "Anna S. Purnell, life tenant" the stocks and bonds contained in his residuary estate, which were valued at $97,785.50. No exceptions were ever filed to this Decree." 226 A.2d 490.

decedent and stated that the amount of the debt was $118,372.13.[3]

Referring to Exhibit A attached to the account, we find that the figure of $118,372.13 was arrived at by recalculating the values of the securities distributed to the life tenant as of May 8, 1943, and also adding in $4,500 of proceeds of sale of real estate heretofore referred to.

While the record does show that notice of the audit of this account was given to the United States Attorney he did not appear and file any objections either to the account or the decree of distribution entered on January 16, 1969 (Exhibit 8). We hold that the plaintiff could not by this method upset valuation figures plainly set forth in the decree of April 28, 1943, which had long since become final. The United States Attorney had been properly served with notice of declaratory judgment proceedings, had appeared therein and successfully sustained the position of the government in the Pennsylvania Supreme Court which clearly stated that the amount of debt was $97,785.50. Under these circumstances the United States was not required to take any further notice of an accounting proceedings and could not anticipate that any such order would affect the previous final orders of the Orphan's Court and the Supreme Court. We consequently hold that the subsequent accounting proceedings are not of an adversary nature and not binding upon the government.

We, therefore, determine that the amount of deduction to be allowed in the federal estate tax return in the Estate of Anna S. Purnell deceased is $97,785.50 plus $4,500 from sale of real estate as to which Mrs. Purnell was also a life tenant. This real estate having been sold subsequent to the decree of distribution in 1943 the proceeds would likewise be held by her as life tenant as an addi-

tional debt due the remainder man. The government does not contend to the contrary and page 3 of the audit statement of this return (Exhibit 1 in this case) plainly shows that the government allowed the proceeds of the sale of this real estate as an additional deduction but erroneously employed the figure of $5,000 instead of the correct figure of $4,500 contained in the account filed after Mrs. Purnell's death. See page 96a of the Supreme Court record.

Adding this $4,500 to the $97,785.50 gives a total deduction of $102,285.50 which we allow in this refund proceeding instead of the figure allowed by the government in the amount of $93,452.59. The government arrived at this figure by adding $5,000 erroneously to the $97,785.50 and then deducting $9,332.91 which it claimed Mrs. Purnell had advanced to her husband's estate. Inasmuch as this was not mentioned in the decree of distribution, there is no basis for reducing the plain amount of $97,785.50 awarded to her.

Two other matters deserve consideration. First, the adequacy of the claim for refund. The government claims that the claim for refund is insufficient to raise the question of the amount of deduction to be allowed for the debt owing by Anna S. Purnell to Verner S. Purnell. It is true that the claim for refund (Exhibit 2) is somewhat vague.[4]

We recognize however the rule that claims for refunds are not governed by the niceties of common law pleadings. See Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L. Ed. 1011 (1933). See also Crook v. United States, 135 F.Supp. 242 (W.D.Pa. 1955). Generally, the question is whether the commissioner's attention has been focused upon the merits of the case. Angelus Milling Co. v. Commissioner of

---

3. "Distribution of the assets hereunder is subject to a debt due by the decedent to Verner S. Purnell pursuant to a decree entered in this action in a declaratory judgment proceeding. The amount of the debt is $118,372.13 as calculated on Exhibit 'A' attached."

4. "a. Property of the value of $302.647.07 was improperly included as a taxable asset of the estate of the decedent."

Internal Revenue, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619.

■ There is no question here that the government knew exactly what the claimant was talking about. The matter was under litigation for approximately three years in the Pennsylvania courts during which time the government actively participated in the proceedings. The audit report on the refund claim dated May 10, 1967 (Exhibit 1) shows that the Internal Revenue Service clearly understood that the dispute was over the amount of assets received by Mrs. Purnell from her husband's estate or what deduction should be taken therefrom for the debtor-creditor relationship in calculating the federal estate tax in her estate. We have in evidence also a letter (Exhibit 11) sent to the Internal Revenue Service under date of January 20, 1967, over three months before the audit report was mailed out which clearly pinpoints the dispute. While we realize that amendments setting forth a completely different claim after the period of limitations had run are not permitted, nevertheless, if the essential facts are set forth and the amendment merely makes the claim more definite then it cannot be objected to. See St. Joseph Lead Co. v. United States, D.C., 190 F.Supp. 637, aff'd 299 F.2d 348 (2 Cir. 1960). Sappington v. United States, 408 F.2d 817 (4th Cir. 1969).

In any event, the government did not raise the question of the adequacy of the claim for refund in its answer to the complaint or in the pretrial narrative statement and is thus procedurally barred from raising it at this time.

Second, the claim for additional attorney's fees. Total attorney's fees of $5,000 have already been allowed as a deduction in this estate. The refund claim (Exhibit 2) in item C merely states that the Internal Revenue Service improperly disallowed an attorney's fee deduction of $3,110. This $3,110 was allowed in the audit report issued by the Internal Revenue Service forwarded by letter dated May 10, 1967 (Exhibit 1). The estate now claims an additional attorney's fee in the amount of $10,000 for services in the state court litigation with respect to the issue.

There is no question that a deduction for additional attorney's fees in connection with this claim for refund is allowable at audit: Regulation 20.2053–3.[5] But evidence must be submitted of the amount "actually paid". No evidence of payment has been submitted.

■ We do not believe that under the circumstances of this case attorney's fees incurred in the declaratory judgment proceedings, which was determined adversely to the estate, are deductible and we will only allow attorney's fees in connection with representation of the estate in this proceeding for refund in federal court and prosecution of the claim before the Internal Revenue Service, and to the extent these have been actually paid. From the facts known to the court in connection with this litigation and in filing the claim for refund and considering all factors to be considered under the Canons of Ethics, (see Ethical Considerations 2–18 as contained in the Code of Professional Responsibility effective January 1, 1970) we will fix the additional attorney's fee to be allowed as a deduction in this estate in the amount of $1,500.00 upon presentation of evidence of payment.

---

5. "(c) Attorney's fees. * * *
(2) A deduction for attorney's fees incurred in contesting an asserted deficiency or in prosecuting a claim for refund should be claimed at the time the deficiency is contested or the refund claim is prosecuted. A deduction for reasonable attorney's fees *actually paid* in contesting an asserted deficiency or in prosecuting a claim for refund will be allowed even though the deduction, as such, was not claimed in the estate tax return or in the claim for refund. A deduction for these fees shall not be denied, and the sufficiency of a claim for refund shall not be questioned, solely by reason of the fact that the amount of the fees to be paid was not established at the time that the right to the deduction was claimed."

Separate findings of fact and conclusions of law are not set forth because the same are contained in the foregoing opinion in compliance with Rule 52(a).

The parties shall submit within 10 days from the date of this order a form of judgment embodying the calculations determining the exact amount of refund to be made in accordance with the terms of this opinion. Evidence of payment of attorney's fees, if any, shall also be submitted therewith. If the parties are unable to agree upon the calculation, each is privileged to submit its own calculation and final decision will be made by the court.

### ORDER

AND NOW, to wit, September 23, 1971, IT IS ORDERED that a deduction of $102,285.50 instead of $93,452.49 shall be allowed as a claim against the Estate of Anna S. Purnell, deceased in calculating the federal estate tax due and owing from the estate to the United States.

IT IS FURTHER ORDERED that an additional deduction shall be allowed for additional attorney's fees in the amount of $1,500 upon presentation of evidence of payment of the same within 10 days from the date hereof.

IT IS FURTHER ORDERED that the federal estate tax in the Estate of Anna S. Purnell shall be recalculated in accordance with this order and a refund shall be allowed in the amount disclosed by such recalculation for which judgment shall be entered against the United States.

IT IS FURTHER ORDERED that the parties shall submit within 10 days from the date of this order a form of final judgment determining the exact amount of refund due in accordance with the terms of this opinion and order. If unable to agree, each is privileged to submit its own calculation and the final judgment will then be determined and entered by the court.